1  Rebecca C. Blair, BPR #017939
   *Admitted Pro Hac Vice*
2  DAY & BLAIR, P.C.
3  5300 Maryland Way, Suite 300
   Brentwood, TN  37027
4  Telephone:     615.742.4880
   Facsimile:      615.742.4881
5  Attorneys for CAROLYN SUE BREWER

6

7

8                    UNITED STATES DISTRICT COURT
9            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  LINEAR, LLC
                         Plaintiff,
12                                              Case No. 09cv1418 BEN(AJB)
    v.
13
14  CAROLYN SUE BREWER, Survivor of her
    husband MITCHELL LEE BREWER, deceased,      **MEMORANDUM OF POINTS AND**
15                                              **AUTHORITIES IN OPPOSITION TO**
                         Defendants.            **LINEAR, LLC'S MOTION TO**
16                                              **QUASH SUBPOENA**
17  CAROLYN SUE BREWER, Survivor of her
    husband MITCHELL LEE BREWER, deceased,
18                                              **HEARING DATE:    AUGUST 7, 2009**
                         Plaintiff,                                **1:30 P.M.**
19
20  v.
21  AMERICAN MEDICAL ALERT CORP, d/b/a
    VOICECARE, a New York Corporation, and
22  SECURE WIRELESS, INC.
23                       Defendants.
24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ....................................................................................5

II.   RELEVANT FACTS ..............................................................................6

III.  THE SUBPOENA SEEKS RELEVANT INFORMATION ....................................9

IV.   MRS. BREWER CAN SUBPOENA A NON-PARTY ............................................10

V.    LINEAR HAS NOT CARRIED ITS BURDEN OF
      DEMONSTRATING THAT THE SUBPOENA IMPOSES
      AN UNDUE BURDEN ..........................................................................13

VI.   THE SUBPOENA DOES NOT REQUIRE THE TESTIMONY
      OF AN UNRETAINED EXPERT ...........................................................14

VII.  THE SUBPOENA DOES NOT SEEK TRADE SECRETS....................................17

VIII. CONCLUSION....................................................................................17

1

## TABLE OF AUTHORITIES

2

**FEDERAL CASES**

3

*Castle v. Jallah*
142 F.R.D. 618, 620 (E.D.Va.1992)....................................................................11

4

*Clearone Communications, Inc. v. Chang*
5   No. 2:07 CV 00037 TC, 2008 WL 901529 (D. Utah Mar. 31, 2008) ...............................12

6

*Gonzales v. Google, Inc.*
7   234 F.R.D. 674, 681 (N.D. Cal., 2006) ..........................................................12

8

*In re County of Orange*
9   208 B.R. 117, 121 (Bankr. S.D. N.Y. 1997) ....................................................11

10

*Irons v. Karceski*
11   74 F.3d 1262, 1264 (D.C. Cir. 1995).........................................................5, 14

12

*Mattel, Inc. v. Walking Mountain Productions*
353 F.3d 792 (9th Cir. 2003) ...................................................................15
13

14

*Mueller v. Walker*
124 F.R.D. 654, 656 (D. Or. 1989)..............................................................14
15

16

*Negotiated Data Solutions LLC v. Dell, Inc.*
No. C09-80012MISC JF (HRL), 2009 WL 733876 (N.D. Cal. Mar. 17, 2009) ...............16

17

*Sea Tow Intern., Inc. v. Pontin*
18   246 F.R.D. 421, 424 (E.D. N.Y. 2007)............................................................5

19

**FEDERAL RULES/STATUTES**

20

Fed. R. Civ. Pro. 26(b) .........................................................................10
21

22

Fed. R. Civ. Pro. 26(b)(1).......................................................................11

23

Fed. R. Civ. Pro. 30(b)(6).......................................................................10

24

Fed. R. Civ. Pro. 45 ............................................................................10

25

26

**TENNESSEE RULES/STATUTES**

27

Tenn. Code Ann. § 29-28-105(b) ..................................................................9

28

3
**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO LINEAR, LLC'S MOTION TO QUASH SUBPOENA**

1
2

**OTHER AUTHORITIES**

3

9A Charles A. Wright & Arthur R. Miller
*Federal Practice & Procedure* § 2459 (3d ed. 2009) ........................................................11

4
5

9A Charles A. Wright & Arthur R. Miller
*Federal Practice & Procedure* § 2463.1 (3d ed. 2009) ........................................................5

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4
**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO LINEAR, LLC'S MOTION TO QUASH SUBPOENA**

# I. **INTRODUCTION**

Linear LLC's ("Linear") Motion to Quash Subpoena should be denied because Linear has failed to show that the fact discovery sought by way of the Subpoena issued by Carolyn Sue Brewer should not be allowed.  Specifically, Linear's motion should be denied for the following reasons:

1. Mrs. Brewer seeks relevant, fact discovery concerning specific Linear products because the defendants in the underlying action, including one of Linear's subsidiaries, have denied the existence of alternative products and designs, and it is believed that Linear manufactures products with such alternative designs;

2. The rules of discovery permit Mrs. Brewer to subpoena a non-party in order to obtain relevant, valuable information;

3. Linear has not demonstrated that the Subpoena imposes an undue burden;

4. The Subpoena does not require the testimony of an unretained expert's opinion; and

5. The Subpoena does not seek trade secrets.

Linear bears the "heavy" burden of proof as the moving party on its Motion to Quash the Subpoena. *Irons v. Karceski,* 74 F.3d 1262, 1264 (D.C. Cir. 1995); *Sea Tow Intern., Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D. N.Y. 2007) (movant bears burden of proof on motion to quash).  Linear has not persuasively shown "the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena" as required by the moving party on a motion to quash. 9A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2463.1 (3d ed. 2009) (citations omitted).

## II.  RELEVANT FACTS

Currently pending in the United States District Court for the Middle District of Tennessee is a wrongful death product liability lawsuit brought by Mrs. Brewer on behalf of her deceased husband, Mitchell Lee Brewer. (Am. Compl., Exhibit 1 to Decl. S. Todd Neal).[1]  In this underlying case, Mrs. Brewer will prove that on November 13, 2006, her husband was strangled to death by the nylon lanyard attached to his personal alert activator. (Am. Compl., Exhibit 1 to Decl. S. Todd Neal, paras. 48-52).  Mrs. Brewer returned home from work to find that her husband had fallen from his motorized wheelchair and the lanyard around his neck had caught the ball throttle of the chair. *Id*.  Mr. Brewer fell on his paralyzed left side, was unable to lift himself to relieve the pressure of the lanyard on his throat, and could not remove the lanyard from where it had caught on the ball throttle. *Id*.  In other words, Mr. Brewer wore a device intended to call for help in case of emergency – to save his life – that instead cost him his life.

The proof will show that Secure Wireless, Inc. ("Secure Wireless") provided Mr. Brewer's personal alert activator and nylon lanyard (together "the Device") for American Medical Alert Corp., d/b/a VoiceCare, ("AMAC"), to be included in AMAC's VoiceCare Personal Response System ("VoiceCare"). (Am. Compl., Exhibit 1 to Decl. S. Todd Neal, paras. 3, 6, 7).  The proof will show that the lanyard was made of woven nylon cord with a breaking strength in excess of the body weight of most users, and both Secure Wireless and AMAC (collectively the "Defendants") knew or should have known that the unbreakable

---

[1] Mrs. Brewer's Amended Complaint has been filed by Linear as Exhibit 1 to the "Declaration of S. Todd Neal in Support of Motion to Quash Subpoena Issued by Plaintiffs and Directed to Third Party Linear, LLC, or in the alternative, Motion for Protective Order."

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO LINEAR, LLC'S MOTION TO QUASH SUBPOENA**

lanyard created a risk of injury, strangulation, and death to consumers who fell while wearing it. (Am. Compl., Exhibit 1 to Decl. S. Todd Neal, paras. 19, 31).

The proof will further show that, at the time the Device was placed on the market, there existed breakaway lanyards, breakaway connectors, and alternative lanyard materials that would eliminate the risk of strangulation to any consumers who fell while wearing the Device. (Am. Compl., Exhibit 1 to Decl. S. Todd Neal, para. 58).   Yet, the Defendants did not use a design alternative that would break away if a consumer wearing the Device fell and the lanyard caught on an object during the fall. (Am. Compl., Exhibit 1 to Decl. S. Todd Neal, para. 35).   Thus, Mrs. Brewer will prove that the Defendants negligently and carelessly designed, manufactured, assembled, tested or failed to test, inspected or failed to inspect, fabricated, constructed, and sold the Device and VoiceCare system and its component parts in a dangerous and defective condition.  (Am. Compl., Exhibit 1 to Decl. S. Todd Neal, para. 38).

Secure Wireless filed its Answer to the Amended Complaint on January 16, 2009, and AMAC filed its Answer on February 19, 2009. (Attached as Exhibits A and B).  Both of the Defendants denied the allegation that at the time the Device was placed on the market, there existed breakaway lanyards, breakaway connectors, and alternative lanyard materials that would eliminate the risk of strangulation to any consumers who fell while wearing it. (Exhibit A, para.58; Exhibit B, paras. 58, 75).

Secure Wireless filed a Corporate Disclosure Statement on January 28, 2009 that identified Linear as a parent company. (Attached as Exhibit C).  Shortly thereafter, it was discovered that Linear also manufactured and marketed products similar to the Device and VoiceCare system.  After due consideration, Mrs. Brewer issued the Rule 45 Subpoena on

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO LINEAR, LLC'S MOTION TO QUASH SUBPOENA

Linear through the United States District Court for the Southern District of California on March 24, 2009. (Attached as Exhibit D; Decl. S. Todd Neal, Exhibit 2).  Mrs. Brewer subpoenaed Linear to determine whether Linear and Linear's subsidiaries designed, manufactured, marketed, or sold breakaway lanyards or alternative lanyard designs at the time the Device was placed on the market, because Mrs. Brewer believes that Linear has knowledge and information concerning the existence of alternative lanyard designs.  The Subpoena, as currently amended by offer of counsel in the letter dated May 11, 2009, (Decl. S. Todd Neal, Exhibit 6), calls for Linear to produce a corporate representative to testify to matters, and also bring documents, concerning:

1.      Linear's business relationship with the two Defendants in the underlying suit, in addition to two other companies identified by Secure Wireless through discovery;

2.      catalogs and other marketing materials for Linear's personal emergency reporting systems that use lanyards since 2003;

3.      information describing  the process for testing and selecting the lanyards used in Linear's and Linear's subsidiary's personal emergency reporting systems since 2003;

4.      information describing any investigations conducted or relied upon by Linear regarding strangulation or potential strangulation from the lanyards used in the personal emergency reporting systems since 2003; and

5.      information regarding the manufacturers for the lanyards used in Linear's personal emergency reporting systems since 2003.

 Mrs. Brewer was very diligent and considerate when determining what information should be obtained from Linear.  Counsel for Mrs. Brewer has already tailored and amended

8

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO LINEAR, LLC'S MOTION TO QUASH SUBPOENA**

the Subpoena in an attempt to resolve Linear's concerns and will continue to accommodate Linear in any reasonable capacity to obtain the facts and information stated in the Subpoena. Mrs. Brewer respectfully requests that this Honorable Court find that the Subpoena seeks essential, valuable facts and information that would be highly relevant to her case and deny the Motion to Quash.

### III.  THE SUBPOENA SEEKS RELEVANT INFORMATION

Tennessee's Products Liability Act expressly provides that, in determining whether a product is defective or unreasonably dangerous, "[c]onsideration is given also to the customary designs, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products." Tenn. Code Ann. § 29-28-105(b).

Secure Wireless and AMAC have denied Mrs. Brewer's allegation that at the time the VoiceCare device was placed on the market, there existed breakaway lanyards, breakaway connectors, and alternative lanyard materials that would eliminate the risk of strangulation to any consumers who fell while wearing the device. (Exhibit A, para.58; Exhibit B, paras. 58, 75).  This piece of evidence elevates Mrs. Brewer's need for certain facts from Linear and makes the information stated in the Subpoena very relevant.  Mrs. Brewer believes that Linear has information that holds contrary to Secure Wireless's and AMAC's position on this highly relevant fact.  One of the main purposes of the Subpoena is to determine whether Linear has discoverable information regarding the existence and availability of breakaway lanyards or alternative designs and materials for lanyards.  The Subpoena serves as a vehicle to determine whether Linear and Linear's subsidiaries manufacture products, or have knowledge of products, that would have prevented Mr.

9

Brewer's death.   The federal rules of discovery provide a means for Mrs. Brewer to determine whether a parent company, who is not a party to the suit, has information contrary to that proffered by its subsidiary, who is a party to the suit.  Mrs. Brewer desires to prove through Linear the defective condition and unsafe nature of Secure Wireless's product.

### IV.  MRS. BREWER CAN SUBPOENA A NON-PARTY

Linear would have this Honorable Court believe that Mrs. Brewer picked their company out of thin air and chose to burden and harass them with a hefty and intrusive discovery request for no apparent reason.  This is not the case.  Linear is the parent company of Secure Wireless, a defendant in the underlying suit, who also manufactures numerous medical/emergency reporting systems, products that are comparable to the Device and VoiceCare system.  Linear also apparently owns other businesses that design, manufacture, and sell medical/emergency reporting systems.  Linear has a significant connection to a party in the underlying suit, and Mrs. Brewer's Subpoena is a reasonable and legally acceptable effort to acquire facts that stem from this unique relationship.

Linear has unremittingly argued that the Subpoena seeks irrelevant information because Linear is a non-party and the subpoena seeks testimony and documents pertaining to products that are not at issue in the underlying lawsuit.   However, Linear's narrow interpretation of what is considered relevant under the federal rules of discovery is contrary to well-settled law.

The scope of discovery does not vary because Linear is a non-party.  The federal rules of discovery clearly contemplate the discovery of information from non-parties and specifically provide that non-party corporations can be subpoenaed for deposition.  *See* Fed. R. Civ. Pro. 26(b), 30(b)(6), 45.  "There is some suggestion that a different test of relevancy

might apply when the subpoena is directed to a person who is not a party in the action, but it seems that there is no basis for this distinction in the rule's language." 9A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2459 (3d ed. 2009) (citation omitted). "[T]he scope of discovery from a nonparty by means of a subpoena *duces tecum* under Rule 45 is coextensive with that of a motion for production from a party under Rule 34." *Castle v. Jallah*, 142 F.R.D. 618, 620 (E.D.Va.1992); *see also In re County of Orange*, 208 B.R. 117, 121 (Bankr. S.D. N.Y. 1997) (holding that discovery should not be denied merely on non-party status).

Furthermore, with regard to Linear's reasoning that the Subpoena should be quashed because their products are not at issue in the underlying suit, the Advisory Committee Note to the 2000 Amendment to Rule 26(b)(1) states, "A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable." The Rules confirm that Linear, as a manufacturer of personal emergency/medical reporting systems, can provide relevant information to the underlying lawsuit. The Subpoena seeks information regarding Linear's knowledge of investigations conducted or relied upon concerning strangulation or potential strangulation from the lanyards used in their products. Regardless of the unique relationship between Linear and Secure Wireless and the other reasons already put forth to support the relevancy of the Subpoena, the Advisory Committee Note explicitly states that information regarding "incidents of the same type" is relevant for discovery purposes. Thus, Mrs. Brewer would be permitted to acquire that information from Linear based solely on Linear being a

manufacturer of emergency/medical reporting systems, irrespective of its relationship with Secure Wireless.

Linear cites to *Clearone Communications, Inc. v. Chang*, No. 2:07 CV 00037 TC, 2008 WL 901529 (D. Utah Mar. 31, 2008) in support of its claim that the Subpoena seeks information that is not relevant to the subject matter of the action. *Clearone* is clearly distinguishable from the matter before this Honorable Court. The plaintiff in *Clearone* filed two deposition subpoenas against a non-party in federal court. *Id.* at *1. Significantly, state litigation was pending between the plaintiff and the non-party at the same time. *Id.* Under such circumstances, the court found that there was no need for discovery in the federal court action to focus on the actions of the non-party when the plaintiff was capable of getting that information in the pending state litigation. *See id.* The court stated that the plaintiff's focus in the federal action should be on the federal court defendants and the non-party's relationship with them. *Id.* The court granted the non-party's motion to quash in part, not in full, and narrowed the topics accordingly. *Id.* Mrs. Brewer does not have any action pending against Linear, and consequently the rationale for the court's holding in *Clearone* does not apply to this matter.

It should also be noted that some courts have expressed reservation with regard to a court other than the one hearing the underlying case and a non-party questioning the relevancy of discovery. Indeed, one court cautioned that "[a] district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt ... the court should be permissive.'" *Gonzales v. Google, Inc.,* 234 F.R.D. 674, 681 (N.D. Cal. 2006).

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO LINEAR, LLC'S MOTION TO QUASH SUBPOENA**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.  LINEAR HAS NOT CARRIED ITS BURDEN OF DEMONSTRATING THAT THE SUBPOENA IMPOSES AN UNDUE BURDEN

Throughout the exchange of correspondence that preceded Linear's Motion to Quash, counsel for Mrs. Brewer repeatedly emphasized the desire to minimize any inconvenience caused by the Subpoena and amended the scope of the discovery request to a fair degree.  Mrs. Brewer will continue to accommodate Linear in gathering the facts set forth in the Subpoena, but first Linear must actually demonstrate and communicate their actual burden, which they have not.

Linear asks this Honorable Court to deny Mrs. Brewer valuable, relevant information because it will have to obtain company information from its manufacturer and administrative offices located overseas.  Yet, Linear has not shown what information must be obtained from China and Hong Kong, and it has not provided bases explaining why such an effort would be unduly burdensome.  In today's business world, information is usually electronically stored, and data is quickly and easily transferable.  It is not clear that the information needed from these overseas locations is in document form, which could mean that perhaps a simple phone call is all that is needed to gather the company information. Mrs. Brewer's Subpoena should not be quashed simply because Linear has offices abroad.

Linear claims that they have eighteen different products in their "Personally Emergency Solutions" product line.  However, only four of those products contain lanyards, and the Subpoena only seeks information regarding products that contain lanyards.  Mrs. Brewer respectfully contends that gathering information regarding these four products is not as burdensome as Linear suggests.  Additionally, Linear has also described the magnitude of their company, claiming that they acquired twenty different companies from 1997-2008.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO LINEAR, LLC'S MOTION TO QUASH SUBPOENA**

However, this figure represents the number of companies that manufacture electronic products.  Mrs. Brewer is only interested in the subsidiaries who manufacture products similar to the Device and the VoiceCare system; that is, companies that are in the medical/emergency reporting systems industry who manufacture products with lanyards.

In sum, Linear is emphasizing the size of their company and overall product line in an effort to demonstrate their burden, when, in fact, the Subpoena is tailored to a much narrower focus.  The burden is on the party objecting to discovery to show that discovery should not be allowed, *Mueller v. Walker,* 124 F.R.D. 654, 656 (D. Or. 1989), and the moving party on a motion to quash a subpoena bears a heavy burden of proof.  *Irons v. Karceski,* 74 F.3d 1262, 1264 (D.C. Cir. 1995).   Linear's Motion falls short of demonstrating that the Subpoena is unduly burdensome. One of Linear's subsidiaries claims that alternative lanyards designs did not exist and Mrs. Brewer seeks to establish through Linear that alternative designs and materials were available that would have prevented Mr. Brewer's death.   The Subpoena has been tailored for that purpose, effectuating a strong probative value. While Linear might have eighteen products in their "Personal Emergency Solutions" product line and have purchased twenty different companies since 1997, those facts do not have any relatable basis for Linear to claim an undue burden.

### VI.  THE SUBPOENA DOES NOT REQUIRE THE TESTIMONY OF AN UNRETAINED EXPERT

By obtaining information from Linear regarding their process for testing and selecting lanyards and any information describing investigations conducted or relied upon concerning strangulation or potential strangulation, Mrs. Brewer seeks to establish *through the parent company's admissions* that Secure Wireless provided an unreasonably dangerous,

unsafe, and defective lanyard in the manufacturing process.  Again, Secure Wireless has denied in its answer that a breakaway or alternative design existed at the time.  But if Linear manufactures and sells, or owns other companies that manufacture or sell, breakaway lanyards that are safer and not defective, Mrs. Brewer is permitted under the rules of discovery to obtain that information from Linear.  Mrs. Brewer is entitled to prove such a fact through the parent company and not just an expert if she so chooses.  Mrs. Brewer has elected to verify Secure Wireless's statements through Linear, in Linear's capacity as: 1) Secure Wireless's parent company; 2) a fellow manufacturer, designer, and distributer of similar devices; and 3) the owner of other business in the industry that manufacture, design, and distribute similar devices. While the Rules allow Mrs. Brewer the ability to employ the use of an expert to explore and demonstrate the availability of alternative lanyards, Mrs. Brewer should not be forced to *only* use an expert for this purpose if she would rather prove the fact in a more advantageous manner.

Linear cites *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003) in support of this argument.  In *Mattel*, the court found it evident that a subpoena was issued on a non-party employer of a witness in an attempt to get the employer to exert pressure on its employee not to testify.  Accordingly, the subpoena was quashed for being "very broad," "abusively drawn," and "served for the purpose of annoying and harassment and not really for the purpose of getting information." *Id*. at 813-14.  To the contrary, in this matter, there has been absolutely no proof to suggest any motive or desire on behalf of Mrs. Brewer to harass Linear.  Mrs. Brewer has gone to great lengths to get information from Linear that is believed to be highly relevant.  The subpoena in *Mattel* was deemed clearly oppressive and "[n]o attempt had been made to try to tailor the information request to the

immediate needs of the case." *Id*. at 813.  As evidenced by the record in this matter, counsel for Mrs. Brewer has already tailored the Subpoena to assist Linear in gathering the information sought and will continue to do so. The facts in *Mattel* are noticeably distinguishable.

In *Negotiated Data Solutions LLC v. Dell, Inc.*, No. C09-80012MISC JF (HRL), 2009 WL 733876 (N.D. Cal. Mar. 17, 2009), the plaintiff filed a motion to compel against a non-party concerning information on various topics, but specifically seeking the non-party's "Registered Transfer Level (RTL) code." *Id*.  The non-party represented to the court that it had produced all responsive documents, except for its RTL code. *Id*. at *3.  The court found that the RTL code was relevant and granted the plaintiff's motion to compel.  *Id*. at *4. The court then reviewed the non-party's motion to quash deposition subpoenas issued by the plaintiff. *Id*.  The plaintiff asserted that it needed deposition testimony to ascertain whether there were any other responsive technical documents that remained to be produced, and the court found that plaintiff's request was "unreasonably cumulative, duplicative and burdensome." *Id*.  The court had already made the determination that the non-party had produced everything, so the court granted the motion to quash mainly because it found that a deposition to confirm that the non-party had produced all requested information was unnecessary.  Again, present circumstances are very distinguishable in this matter. Mrs. Brewer has not received any information from Linear prior to serving our Rule 30(b)(6) subpoena, and therefore the Subpoena cannot be construed as "unreasonably cumulative or duplicative."

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO LINEAR, LLC'S MOTION TO QUASH SUBPOENA**

## VII.  THE SUBPOENA DOES NOT SEEK TRADE SECRETS

Linear claims to derive economic value from its drawings regarding its "Personal Emergency Solutions" product line that are trade secrets.  Although the Subpoena asks for information regarding overall product design, Mrs. Brewer is specifically interested in the lanyard component of these products, and not the electronic pendants.    The Subpoena does not seek trade secrets concerning the electronic pendant, and Mrs. Brewer will accept limitations on the subpoena to that effect. Furthermore, Mrs. Brewer will enter into any protective order this Honorable Court deems appropriate to maintain the secrecy of these drawings.

## VIII.  CONCLUSION

Based on the foregoing, Mrs. Brewer respectfully request this Honorable Court deny Linear's Motion to Quash.

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO LINEAR, LLC'S MOTION TO QUASH SUBPOENA**

1

2    DATED:       July 14, 2009                    **DAY & BLAIR, P.C.**

3

4                                          By:    /s/ Rebecca C. Blair
                                                  Rebecca C. Blair
5

6
**Designated Member of the Bar Pursuant to CivLR 83.3(5):**
7    Jeremy Robinson, (Bar No. 188325)
     CASEY GERRY SCHENK
8    FRANCAVILLA BLATT & PENFIELD, LLP
9    110 Laurel Street
     San Diego, CA  92101
10   Telephone:    (619) 238-1811
     Facsimile:    (619) 544-9232
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18
                 **MEMORANDUM OF POINTS AND AUTHORITIES
         IN OPPOSITION TO LINEAR, LLC'S MOTION TO QUASH SUBPOENA**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that on July 14, 2009, a copy of the foregoing was filed electronically. Notice of this filing will be sent by undersigned via electronic mail and/or by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

via email:
Wendy Lynne Longmire, Esq.
Julie Bhattacharya Peak, Esq.
ORTALE, KELLEY, HERBERT &
CRAWFORD
Third Floor, Noel Place
200 4th Avenue North
Nashville, TN 37219
wlongmire@ortalekelley.com


via email:
Richard D. Moore, Esq. (13354)
Levine, Orr and Geracioti
210 Third Avenue North
P.O. Box 190683
Nashville, TN 37219
rmoore@levineorr.com

via operation of the court's electronic filing system:
S. Todd Neal (Bar No. 174827)
PROCOPIO, CORY, HARGREAVES &
SAVITCH, LLP
530 B Street, Suite 2100
San Diego, California 92101
todd.neal@procopio.com

_____
Rebecca C. Blair

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO LINEAR, LLC'S MOTION TO QUASH SUBPOENA**